Hat, Judge,
delivered the opinion of the court:
This is a suit brought by Brewer & Jones, the plaintiffs, to recover from the United States certain sums of money which they claim are owing to them under a contract entered into by them with the United States on May 7,1913.
On May 7,1913, the plaintiffs entered into a contract with the United States whereby they agreed to complete the work, then partially finished, on Lock and Dam No. 2, Tombigbee *86 River, Alabama. Before this contract was entered into one P. H. O’Brien had a contract with the United States providing for the construction of Lock and Dam No. 2, and Lock and Dam No. 3, Tombigbee River, Alabama. The work on these locks and dams was not satisfactory to the Government. Particularly was this true as to the work on Lock and Dam No. 3; the work on Lock and Dam No. 2 was being done by Brewer & Jones, and was satisfactory to the Government, but because of the unsatisfactory work on Lock and Dam No. 3 the Government found it necessary to annul the contract with O’Brien, which contract embraced both locks and dams. At the time the contract with O’Brien was annulled the work of constructing Lock and Dam No. 2 was more than fifty per cent completed. The contract with Brewer & Jones provided that the work of constructing Lock and Dam No. 2 should be done in accordance with the specifications of the original contract with O’Brien, and the specifications of the original contract were set out in full in the contract made with Brewer & Jones.
One specification of the original contract provided that there should be deducted and withheld from all payments up to 50 per cent of the estimated cost of the work, a percentage of 10 per cent-, which retained percentage was to be paid as a part of the final payment for the work. This specification was also a part of the Brewer & Jones contract.
Shortly after the work was commenced by O’Brien he employed the Southern Bridge Company as a subcontractor on Lock and Dam No. 2, but this company soon abandoned the work. The plaintiffs were then employed by O’Brien as subcontractors on the work of constructing Lock and Dam No. 2. The plaintiffs continued on this work until O’Brien’s contract was annulled. From the time the plaintiffs undertook the work they furnished all the money, labor and material necessary for its continuance, and the United States paid to the plaintiff Brewer, acting as attorney in fact for O’Brien, the money earned under the contract on the work on Lock and Dam No. 2.
Prior to the cancellation of the O’Brien contract, in accordance with the requirement that 10 per cent of the estimated cost of the work should be deducted and withheld *87 from all payments, deductions amounting to the sum of $17,508.75 had been withheld. After this contract of May 7, 1913 was entered into Brewer & Jones inquired as to what amount of these deductions had been earned by them while working as subcontractors. They were informed by the United States officer in charge of the work that they had earned the sum of $11,991.86 in retained percentages withheld from payments for work done on Lock and Dam No. 2. It thus appears that when the plaintiffs entered into the contract of May 7, 1913 with the United States they had already earned the aforesaid sum of $11,991.86, and this sum they expected to receive and had a right to expect to receive when they should have completed their contract and final payment was made.
At the time of the cancellation of the contract with O’Brien the officer, Col. Flagler, in charge of the work, expressed himself as satisfied with the progress made by Brewer & Jones on the work of construction of Lock and Dam No. 2, and that he considered making a contract with them for its completion. Brewer & Jones at that time called attention to the retained percentages which they had already earned, and Col. Flagler in a telegram to the Chief of Engineers stated that he would recommend a contract “ arranged to include percentages already earned by Brewer & Jones.” After further negotiations a contract was forwarded to Brewer & Jones on April 1, 1913, which contract they refused to execute because the same did not provide for taking care of the retained percentages which they had already earned, and because it also contained a provision by which the Government would retain percentages on future work amounting to $8,000. A contract was finally prepared by the Government which the plaintiffs executed, and which they understood would not preclude them from receiving the retained percentages already earned by them when the work was completed. They were confirmed in this understanding when no additional deductions of retained percentages were made during the progress of their work under their contract and when all vouchers in favor of the plaintiffs after the date of their contract showed the retained percentages withheld by the United States. This was shown on every *88 monthly voucher during the progress of the work except the final estimate, which omitted all reference to the retained percentages.
This sum of $11,991.86 was earned by Brewer & Jones. It is not claimed that it belongs to the United States, but on the contrary it must be admitted that it is money earned by Brewer & Jones, and that the United States has received its value in labor and material. It seems to the court under all the circumstances that Brewer & Jones are entitled to a judgment for the retained percentages earned by them.
It appears that the work on Lock and Dam No. 3 was completed to the satisfaction of the Government. From which it is to be inferred that the completion of that work did not cost the United States more than the contract price of the work, and therefore the retained percentages withheld by them did not belong to them, but did belong to the contractors. The United States, so far as the record discloses, has made no claim to this money. If the United States had expended more money in the completion of the O’Brien contract than the contract price, it is not conceivable that counsel would have overlooked that fact, so necessary to the defense in this case. The money does not belong to the United States, they make no claim to it, and they should not be put in the attitude of claiming money to which they are not entitled.
It may be said that some equities may exist between Brewer & Jones and O’Brien as to these retained percentages. We do not think from the evidence that such is the case; but if it were, it is within the power of the court to bring in parties interested, and the fund in dispute being under its jurisdiction, determine to whom it should be paid, but in this case it is not necessary, as the facts show that Brewer & Jones are the owners of the fund. The Globe Works v. United States, 45 C. Cls., 497, 506.
The provisions in the specifications of the contract defining common excavation and foundation excavation are: “Foundation excavation shall include the removal of all material, of whatever nature, below the elevation of the lock floor of the main lock chamber.” This excavation was to be paid for at the rate of $1 per cubic yard, while common *89 excavation was to be paid for at the rate of 40 cents per cubic yard. The plaintiffs, during the progress of the work, excavated 756.9 cubic yards of material below the elevation of the lock floor and were only paid 40 cents per cubic yard therefor, and therefore should be allowed an additional 60 cents per cubic yard for the 756.9 cubic yards of material so excavated, viz, the sum of $454.14. The plaintiffs in their petition state that if they are allowed the retained percentages they make no claim for advances on timber, culling timber, advances on stone, and sheathing felt; the court has therefore made no findings as to these items. In the reply brief of the plaintiffs it is conceded that Findings X and XI asked for by the plaintiffs, dealing with excavation not measured or paid for, and excess stone ordered, may be discarded.
Judgment is awarded the plaintiffs under Findings III and Y in the sum of $12,446. The other items claimed by plaintiffs are disallowed, and the petition as to them is dismissed. It is so ordered.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.